The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning, counsel. This is case number 4-23-1487, Cox v. Poe et al. Counsel, first, let me apologize for the late start. In the prior case, we had had some technical difficulties that pushed back your start time, so we appreciate your patience. At this time, I'm going to ask for appearances. First, for the appellant. Timothy Chartrand for the appellant, Your Honor. All right, and for the appellees? Matthew J. Kowals for the appellees, Your Honor. Okay, thank you. Mr. Chartrand, you may proceed with your argument. Thank you, Your Honor. And may it please the Court, Mr. Kowals, my name is Tim Chartrand. I represent Mr. and Mrs. Cox, the appellants in this case. The first issue that this Honorable Court must decide is whether there was a genuine issue of material fact as to whether an agency relationship was formed between Mr. Clark and the Poe defendants as it relates to the upkeep of the premises at issue. Now, normally, the formation of an agency relationship is a question of fact, and in fact, the trial court had once found that this was a question of fact in response to the defendant's second motion for summary judgment. And then, of course, the trial court changed course in response to the third motion for summary judgment. In regards to the agency formation here, it's our contention that there was an agency relationship formed between Mr. Clark and the Poe defendants. Sorry, I hear some feedback. I apologize. As it relates to an effect where he would be acting as the property manager of this premises, and that agency relationship was in addition to the farmhand position Mr. Clark had for the Poe defendants. And this agency relationship was admitted to by Mr. Clark in his testimony, and that's found in the record at C883, page 39, lines 12 through 14, where Mr. Clark testified under oath that part of his employment with the Poe defendants was renting this premises. And he further testified on that same record, C883, page 40, lines 4 through 7, and I quote, and in entering into the agreement to rent the Sherman Road address as part of your employment, you'd entered into a lease, correct? Answer, correct. So Mr. Clark admitted to this agency relationship where in effect he acted as the property manager of this premises in addition to his farmhand position. But in addition to that, the lease lends to that conclusion as well. The lease started at his employment with the Poe defendants, and the provision in the lease states that the lease ends at the end of his employment with the Poe defendants, and he rented this premises for $1 a month. In addition to that, Defendant Poe and Defendant Clark both testified that the renting of the premises was connected to the employment with the Poe defendants. And in addition to that, Robert Manley, who was also an employee of the Poe defendants and who had previously rented the same premises, testified that when he rented it, he rented it for $500 a month, and it was connected in no way to his employment. We believe that evidentiary record alone establishes a genuine issue of material fact as to whether this agency type relationship was formed. But in addition to that, when you apply the factors found in the various case law, including Lange and Brunson, to the evidentiary record, it lends to that same conclusion. The Lange factors, there are four Lange factors. One is the right to control the method of work. The second is the method of payment and whether taxes are deducted. The third is the skill level of the work. And the fourth is furnishing the necessary tools and equipment. And here, when you apply those factors to the evidentiary record, it lends to the conclusion that there is a genuine issue of material fact as to whether this type of agency relationship was formed. The right to control is the cardinal consideration. It's our contention that there is three ways in which the Poe defendants could control the upkeep of this by Mr. Clark. One is he was doing the very nature of the agency relationship where he acted as property manager. This type of agency relationship is not new. It's identified in the Gaffney case, in the badging case when it was in the 4th District, as well as Section 233, which states that, and this was identified in the Gaffney case, that although the servant had regular hours of employment, he may be upon call at other hours or having the custody of land or chattels, he may have continuing duties of care and connection therewith. And that's the case here. The other reason that the Poe defendants could control or had the right to control the upkeep of the premises by Defendant Clark was because he was using a lawnmower, a high-powered lawnmower that was owned by the Poe defendants. And there is a legal inference of auto ownership that an agency has formed and that you're acting within the scope of that agency. Now, that legal inference can be rebutted, but whether it's been rebutted is also a question of fact under the Horse case. The third reason that the Poe defendants had the right to control Defendant Clark's upkeep of this premises is because he was mowing a portion of the premises that he testified was not a part of the lease. As he testified, if he was instructed by Mr. Poe to mow certain portions of the property, he would. And also, if Mr. Poe asked him to return the lawnmower or get off the lawnmower, he would abide by that instruction. So, we believe that the right to control, which is the cardinal consideration of the length factors, has been met by the evidentiary record here. The second length factor, the payment method, again, is met by the evidentiary record. As Mr. Clark testified, renting the premises was not deducted from his salary. It was all, quote, rooped in as employment, unquote. The third, the skill level, the length case states that the lower the skill level, the more likely the agency formation. Here, mowing a lawn is a skill level type of work, and that's not refuted by the defendants. Here, he was not trained on how to mow the lawn, nor did he ever read the manual. And then the fourth length factor, furnishing the necessary tools and equipment. The Poe defendants furnished the truck, the trailer, the lawnmower, the gas, a leaf blower. And so, all of the necessary tools to mow on the date of the incident were furnished by the Poe defendants. In addition, other factors identified in other case laws such as Bruncheon is the right to terminate the relationship, which was found particularly important by the Fourth District in the Commerce Bank case. Here, both the lease provisions and Defendant Poe testified that they had the right to terminate this relationship. And the last factor identified in Bruncheon is the direction to the servants. And although there is no evidence adduced that Mr. Poe ever directed the lawn mowing activities of Mr. Clark, he did say Mr. Clark testified that, again, he would abide by instructions on what parts of the lawn to mow. And continuously throughout Mr. Poe's deposition, he testified he wouldn't direct the how to mow the lawn, what parts of the lawn, and when to mow the lawn. But the Wabash case says that doesn't mean you couldn't direct. And again, it's the right to exercise the control whether that right's actually been exercised or not. Mr. Chartrand, if I could interrupt for a moment. These factors, the Lang factors and the others that you've identified, they're useful in differentiating between an agent and an independent contractor, right? That's what you're asserting here. Correct, Your Honor. Opposing counsel would say, well, he wasn't either. Poe wasn't either an agent. He wasn't an independent contractor. So this is kind of a straw man argument. When you go through the factors, he was simply mowing the grass for his own benefit. And so these factors that differentiate, help differentiate between whether one who is performing an identified task for a master should be considered an agent or an independent contractor. So what do you say to that? Well, I would say to that, that that would ignore the evidence of the testimony of Mr. Clark, where he admitted that renting the property was part of his employment with the Poe defendants. That alone, again, creates this type of agency relationship. And that's why we further dive into these factors, which also support that type of agency relationship. There was a lease, correct? I'm sorry? There was a lease? There was a lease. Yes, Your Honor. Okay. When you have a landlord-tenant situation, landlord leases property to a tenant, landlord is basically giving up ownership and control of the lease premises to the tenant, right? In certain situations, that is a separate argument. We made that he didn't give up control of this Well, how did the defendants, Donald Poe and Poe Enterprises, retain control of that? Because Mr. Clark testified that the lawn was not a part of the lease. He testified that only the house itself was a part of the lease. Well, in the same deposition, didn't he give contrary testimony? He gave contrary testimony on cross-examination, to which I on the basis of it being asked and answered. Well, it's still on the record. It is still on the record. It is contradictory testimony. You're right. But that doesn't negate the first testimony where he said it was the house itself, which is all the more reason that this should be decided by the jury. And that credibility issues should be decided by the jury. Please proceed. Okay. Thank you, Your Honor. The second issue this honorable court must decide is whether Mr. Clark would have been acting within the scope of his agency relationship. Again, that's normally a question of fact for the jury to decide. And again, the trial court had once decided that this was a genuine issue of material fact and then changed course in response to the defendant's third motion for summary judgment. In regards to this, Your Honor, we look at the three Section 228 factors. Those are whether the conduct was the type Mr. Clark was employed to do, whether the conduct was performed within authorized time and space, and whether the conduct was actuated at least in part for the benefit of the employer. Again, I presented two scenarios in my briefs, Your Honors. The first scenario is the agency relationship we was admitted to by Mr. Clark, which again is him acting essentially as the property manager of the supremacist. And in regards to that scenario, the factors applied to the evidentiary record is pretty straightforward, and I don't need to go through that again. But the trial court and the defendants have tried to confine the relationship between the podefendants and Mr. Clark as his farmhand position. And in regards to that, even if we confine that relationship to the farmhand position, we believe that the evidentiary record has met these factors. In regards to the type of work he was employed to do, he was employed as a farmhand. Part of his farmhand position included maintenance of various properties owned by Mr. Poe and rented to the Poe Enterprises, and included within that maintenance was mowing, specifically mowing roadside ditches. But this first factor is broad enough to include incidental acts, and there are a number of factors you look at to determine whether it's an incidental act, and that was never performed by the trial court analysis of those factors. No single factor controls, but such factor as whether the act is commonly done by the servant, the time and place and purpose of the act, whether the act is outside the enterprise of the master, the furnishing of the necessary tools. We believe applying those factors to the evidentiary record supports that mowing the lawn on the date of the was incidental to what he did as a farmhand at these various properties that were owned by Mr. Poe and rented to Poe Enterprises. Counsel, good morning. Wasn't there also evidence that the mowing of the lawn around the residence was done after he had, quote, finished work? I'm not giving you an exact quote, but that was the gist of it, that he had finished his chores, his workday, and he was mowing the lawn around his personal residence because he liked it to look nice, manicured, and it was for his own pleasure. Not pleasure, but because he liked to maintain it that way. Yes, Your Honor, you're correct in that. Mr. Clark did testify to that during his discovery deposition. But again, that particular line has to be adjudged by the context of the other evidence in the case. The other evidence in this case provides that Mr. Clark did not have a set schedule at his work with Poe defendants. He often worked beyond 5 p.m. and was permitted to work beyond 5 p.m. on such things as maintaining this exact lawnmower in the shed that he called the shop behind this house that also housed various other pieces of equipment for the Poe defendants. He also testified in September, because it was harvest time, that he often worked until dusk. And importantly, he started mowing this lawn at dusk. And all of that and the reasonable inferences from that evidence could support by a jury the finding that he was acting within the scope of his employment. And I understand his testimony, but I think it has to be adjudged by the context of the other evidence in this case. Thank you. Yeah, thank you, Your Honor. In regards to the second factor, again, if we can find it to the farmhand position, he was acting within the authorized time and space. He was acting within the authorized space because he was mowing a Poe Enterprise property, which was his general job to do as a farmhand. And he was acting within the authorized time because, as I just mentioned, he had no set schedule. He often worked beyond 5 p.m. and he worked specifically until dusk, oftentimes in September when it's harvest time. And then the third factor, if we can find it to the farmhand position, is whether it was done at least in part for the benefit of the Poe defendants. And again, mowing an area that's not included in the premises can only be for the benefit of the Poe defendants. And so we believe all three factors have been met by the evidentiary record if we confine this relationship to the farmhand position, which we believe he did have the agency relationship of acting effectively as the property manager. In regards to the third issue that this honorable court must decide is the direct causes of action for negligent supervision, which counts 7, 8, 11, and 12 of the amended complaint. In regards to the negligent supervision, the Doe versus Coe case is the one that we've cited, which indicates that there is a general duty for an employer to supervise its employees. The extent of that duty depends on a number of factors outlined in the Doe versus Coe case, which again was never analyzed by the trial court. So how do you think, was it, how was it foreseeable if it was that Clark would mow the premises on this date, in this very spot, discarding grass clippings in the roadway? How was that foreseeable? So the standard is general foreseeability, Your Honor. So the evidence in this case demonstrates that Mr. Poe knew defendant Clark used this lawn mower to mow this lawn on previous occasions. He gave, granted access to all the equipment he had available to him to Mr. Clark. He also knew that this particular roadside disk, because it was his premises, was parallel to Gus Road, which is the road that was the incident occurred on. He often allowed his employees to mow or perform any task for him after 5 p.m., and around September that occurred usually around dusk. And they both understood that grass can be shot out of this lawn mower, whether the chute is open or not. He also provided Mr. Clark with the leaf blower that he intended to actually use to blow off the grass on the roadway after he was done, but he didn't get to that point on that particular date. And in addition, the Illinois Litter Control Act literally spells out this scenario, where it defines litter as grass clippings, and it states you can't deposit grass clippings on public property, including public roadways, because of the safety and health of the general public. It's well known that this type of condition is green ice. And so I think that's how we meet the general perceivability here, Your Honor. Okay, go ahead and proceed. Thank you, Your Honor. And then the last issue goes to our direct cause of action that was pled in the alternative against defendant Poets himself. This is count five and six, which is just general negligence, which goes back to what I've kind of already mentioned in regards to retaining control of the lawn. A landlord has a continuing duty to reasonably maintain his property if he retains control over a certain property. Here, we have the testimony of Mr. Clark testifying that the lease only covered the house itself, not the lawn, and then he contradicts himself later on. We have Mr. Poe testifying that included the lawn and the house, but he testified he doesn't know where that's said. The lease actually just defines the property as 4872 Sherman Road. We know it doesn't include things like the 160 acres, the grain bin that also housed grain of Poe Enterprises, the shop that housed equipment for Poe Enterprises, the gravel parking area that housed equipment for Poe Enterprises. So we believe there is a question of fact as to what this lease covered, and that Mr. Poe retained sufficient control over this lawn such that he had to maintain it in a reasonably safe manner. He didn't do so. You have to go fall back on the analysis of the agency because Mr. Clark was actually mowing. And again, this would be straightforward, and it'd be the same analysis I do for the property management agency relationship. Here, in regards to the law, the terms of the lease, you have to look at, this is from Graham and Gula case, you have to look at the lease terms too on whether there was sufficient control. In this case, the lease spells out that without notice, Mr. Poe was allowed to enter the property. Any alterations that were made on the property had to be first approved by Mr. Poe, and then they became Mr. Poe's property. He was allowed and permitted to put up for sale signs or for lease signs during the course of the tenancy with Mr. Clark. And the Graham and Gula case have adjacent facts, and we believe those cases support that there is a genuine issue of material fact as to whether Mr. Poe retained sufficient control over the lawn. The defendants, I'm running out of my time, your honors. I will just rely on my briefs for the remaining issues, but we would state that we believe the trial court erred in granting summary judgment to the various counts in regards to responding in superior, the direct causes of action of negligent supervision and direct negligence. We would ask that those rulings be overturned and that this case be amended so that it can be tried on its merits. Thank you, your honors. All right. Thank you, Mr. Chartrand. Mr. Kowals, and is that how you pronounce your name? It is. Think of it as Kowalski without the K-I on the end, and you're on the right track. Okay. Thank you. Mr. Kowals, you may proceed with your argument. All right. May it please the court. My name is Matthew Kowals, and I represent the appellees in this matter, Donald Poe and Poe Enterprises. To start, the appellant's arguments fail for multiple reasons, and the grant of summary judgment by the lower court should be affirmed. There are four reasons the appellant's arguments fail. First, a new agency relationship was not created by and through the residential lease between Mitchell Clark, Carol Poe, and Donald Poe, and there is also no agency relationship relative to Poe Enterprises' employment of Mitchell Clark and Mitchell Clark mowing his own residential lawn after hours. Two, even if we assume, arguendo, that there was an agency here relative to Mitchell Clark mowing his own lawn after hours, the appellant does not meet the required factors under Restatement of Agency 228 to establish that Mitchell Clark was in the scope of an agency on September 23, 2019, when he was mowing the lawn. Three, the Poe defendants cannot be liable under a direct negligence or negligence supervision theory because there is no agency relative to Donald Poe, Poe Enterprises, and Mitchell Clark in regard to these activities. Nevertheless, even if there were, this was not a foreseeable occurrence such that Poe and Poe to the plaintiff, that being Mr. Cox. Finally, number four, the Poe defendants are not liable, or rather Donald Poe is not liable as a landlord because one, he did not retain control over the yard, and two, the injury to Mr. Cox occurred off property. It was not on the premises owned by Mr. or Poe Enterprises. I would turn first to the agency considerations. Counsel, good morning. If we do that and use the criteria that are in our Lang versus Silva case that counsel referred to, don't we have, aren't those criteria met? So we have a low level of required with respect to lawnmower. It was Poe's lawnmower. The house and the lawn surrounding the house was part of the premises. And at least one could say there might be a material question of as to the right to control the mowing. So why are these criteria not met and why don't they establish agency here? Certainly your honor. And let me be frank, the criteria are not met and agency is not established in this case. In fact, the facts are undisputed and there are no material facts relative to Mr. Poe's right to control Mr. Clark's mowing activities. So to start, the first criteria is the one you just addressed, the right to control. This is a paramount criteria amongst the test. And it encapsulates both the right to control and also takes into consideration actual control. And evidence of actual control, it could be a strong evidence of an actual agency. So they are two different things, but they both fit, I believe, within the same criteria. So first things first, the evidentiary record and the record before your honor is bereft of any evidence that Mr. Poe or Poe Enterprises ever actually controlled Mr. Clark's mowing activity. Mr. Clark testified, as you pointed out during opposing counsel's argument, that he mowed that lawn because he wanted the lawn to be of a certain length. He characterized the yard as his yard during that line of questioning. He testified that when he mowed his yard, he was off the clock from his duties as a farmhand with Poe Enterprises. And to that point, he was very clear. He also flat out testified that Mr. Poe did not direct his mowing activities. And given that, he also testified that he mowed the lawn to his preference and not Mr. Poe's preference. Mr. Clark's testimony is definitive in this regard that Mr. Poe and Poe Enterprises never actually directed him in the means and methods of the mowing. Likewise, Mr. Poe testified that he never even observed Mr. Clark mowing the yard. He did not know when he mowed the yard and he never inspected Mr. Clark's of the yard after the fact. And so the record fully supports the fact that Poe and Poe Enterprises did not direct or actually direct Mr. Clark's mowing activities. But then we turn to whether there is evidence in the record that Poe and Poe Enterprises directed or had the ability to direct Mr. Clark's mowing activities. And the record is clear on this point. Opposing counsel cited to the record relative to Mr. Clark's testimony but did not cite to Mr. Poe's testimony because it would be within Mr. Poe's rights to have the ability to direct. What did Mr. Poe believe he could do? Did he have the ability to direct? That right is vested in him not in Mr. Clark. And Mr. Poe on this topic was asked if he could direct Mr. Clark's mowing activities. He testified, I don't give him his orders. When specifically asked if he could dictate how the lawn was mowed, Mr. Poe said no. That is his testimony. When specifically asked if he could dictate when the lawn was mowed, his answer was no. So the evidence in the record establishes that Donald Poe did not have the ability to direct Mr. Clark's mowing activities. And beyond that actually did not direct Mr. Clark's mowing activities. And I suppose this makes some sense because counsel is in this case attempting to conflate two legal relationships which simply don't mix. On the one hand we have a lease, we have a landlord and a tenant relationship between Carol Poe, Donald Poe, and Mitchell Clark. And then on the other hand we have a separate relationship between Mitchell Clark and Poe Enterprises. And in that relationship Mitchell Clark was a farmhand for Poe Enterprises. In the landlord-tenant relationship we have the couple Mr. and Mrs. Poe and Mitchell Clark as a lessee of their property. These two legal relationships do not merge. And that strikes at the heart of the appellant's argument. Because what the appellant is trying to argue here is that because of this lease and because of the terms of the lease and given the fact that there are maintenance obligations in the lease, that somehow merges the relationship of Mitchell Clark as a farmhand with Mitchell Clark as a lessee into one. And that is what they're asserting when they state that a new agency relationship was created such that Mitchell Clark was a property manager of the Sherman Road address. And nothing could be further from the truth. There's nothing in the lease regarding Mitchell Clark agreeing to be a property manager. This is a standard Illinois residential lease which contains standard Illinois residential provisions, which almost always would include duties to maintain the property. If we all... May I interrupt you for a moment? Of course. And I understand you're talking now about the separation between the landlord-tenant relationship versus the employment relationship that we were just talking about. Going back to the employment relationship and specifically these factors, the lying factors, those differentiate between an agent and an independent contractor. Is that right? That is correct. Okay. Do you accept that to be germane to this analysis here? And are you suggesting that in fact Mr. Cox was an independent contractor and not agent? And to clarify, are we discussing Mitchell Clark, Your Honor? Yes. I apologize. Sorry. I said Cox and I meant Mitchell Clark. No. I am not suggesting he's either an agent or an independent contractor by and through his mowing his own residential yard, which he was leasing. Okay. Yeah. If that's the case, then why are we talking about the lying factors? Well, because the lying factors can provide guidance relative to an analysis of whether an agency exists. Understanding that there is interplay with those factors and the analysis of an independent contractor. But I suppose on my end, I'm utilizing these factors because they give guidance to what courts would consider to be an employment relationship or an agency relationship. And I believe in this case, all of those factors support the lack of an agency relationship. Moving on from the paramount factor, which is the right to control the manner of work performance, we also have another important factor, which is the nature of the work in relation to the general business of the alleged principle. And this factor, once again, supports the argument that there is no agency here between Mitchell Clark and the Poe defendants relative to his mowing activities. Because the nature of Mitchell Clark's work, contra to what opposing counsel asserted during his argument, has nothing to do with mowing residential lawns. Mitchell Clark testified that his job duties as a farmhand for Poe Enterprises include taking care of the farm so ditches next to the farmland. And he would utilize a tractor and a bush hog when he mowed those roadside ditches. That is a far cry from utilizing a mower to mow one's own residential lawn. Poe Enterprises is not a landscaper. They're a farming enterprise. And Mitchell Clark testified with certainty that his job duties for Poe Enterprises did not include mowing residential lawns. Counsel, I have a question. Of course. Does it make a difference that the lease on the residential property is a perquisite of employment? Well, I don't believe it is a prerequisite of his employment. I didn't say prerequisite. Oh, I'm sorry. A perk. A perk. I don't believe it does. For which he pays $1. Correct. He does pay $1 pursuant to that lease. Is the appellant conflating those two or are you attempting not to conflate them? I can see a lessee and a farm employee are two different statuses. But aren't they hooked together in this instance? I don't believe they are hooked together. I will concede that there is testimony from both Mr. Poe and Mr. Clark that the lease was an employment benefit. He was given a reduced rent as an employment benefit for the home that was owned by Donald and Carol Poe and leased to him. But that doesn't mean then that they are so interrelated such that the two relationships are merged. The practicality of the situation is there are many, many businesses that are required to provide perks or benefits such as this when there is not an adequate workforce in the area. And Mitchell Clark signed this lease. It was only $1. But the amount is of no moment to the analysis. The amount could be $1, $10, $100, $1,000. What matters is that this is a separate and distinct legal relationship. And the amounts of a lease don't change that and don't change that relationship regardless of the terms of the lease and regardless of the amounts of the lease. This wasn't a condition of his employment. And put another way, and this goes to one of the factors relative to the agency analysis underlying, the right to discharge. Now, both Mr. Poe and Mr. Clark testified, and this is in the record, that if Mr. Poe discharged him from his farmhand duties, which did not include mowing residential lawns or this residential lawn, then he could terminate the lease. But that doesn't mean that Mr. Poe, if he was unhappy with Mr. Clark's mowing at the property, could then discharge him from his farmhand duties. There is no evidence that it goes the other way. And that strikes at the heart of the right to discharge factor because there is no evidence that Mr. Poe had a right to discharge Mr. Clark from his duties as a farmhand predicated upon issues relating to the lease relationship and the landlord-tenant relationship. And then onward it goes with the remaining factors. And by the way, the right to discharge is one of the paramount and most important factors in the right to discharge. Well, I'm just speaking to the factors elucidated in Lange, Your Honor. I understand that, but this gentleman is an at-will employee. Mr. Poe can do anything with him he wants in regard to employment. Oh, correct. He could at any time discharge him from his farmhand duties in the absence of a contract and subject to Illinois employment law. And is the lease tied to his employment, i.e. is the understanding or the lease language suggests that if he is no longer an employee of Poe or Poe Enterprises, does he get the house? Does he get to keep the house? Or does he have to move out? No, the record establishes that if the employment is terminated, the lease could be terminated. Now, there is no evidence that he was terminated and the lease was terminated, but that is the testimony in the record that that could be done. I agree, Your Honor. Then again, the relationship is so distinct between the landlord-tenant and the duties relative to a farmhand. And given the fact that Donald Poe never observed him mow the and did not observe him maintain any portion of the property, for those reasons, there is no evidence that Donald Poe would or could discharge him as a farmhand if Mr. Poe didn't like how he was performing his mowing activities. There's just no evidence of that, understanding that he was an or the $1 a month in the lease, there's no evidence that that's tethered to the mowing activities themselves. Yes, there is a $1 term in this lease, but there is no evidence that that supposed reduction in the fair market value of this rental property to Mr. Clark was payment for him mowing the residential lawn. The only evidence is that Mitchell Clark mowed the residential lawn because Mitchell Clark liked it to be of a certain length. So, I think the factors in Lange point towards no agency here, and I'm running out of time, so I'll move on quickly to the scope of agency, because even if there is an agency, this scenario certainly does not meet the criteria outlined in Restatement 228. And because I'm running out of time, and most importantly, the third factor, which requires that the servant's acts must be actuated at least in part by a purpose to serve the master, utterly fails. The record is devoid of any evidence that Mr. Clark's mowing activities were actuated to serve Mr. Poe or Poe Enterprises. And the focus of the per the case law is on the servant's state of mind, i.e., Mr. Clark's state of mind. And it is undisputed what that state of mind was. We know what that state of mind was. He testified to it. He mowed the lawn because he liked it of a certain length. There is no evidence in the record whatsoever to establish that Mr. Clark was acting to benefit or to serve Poe Enterprises or Poe when he mowed the lawn on September 23rd of 2019. Turning to the first factor, well, I'll move on. In regard to the negligent supervision portion, Doe versus Coe establishes that the duty to supervise arises when an employer knows or should have known that the employee was likely to engage in dangerous conduct. That is part and parcel of the Doe and Doe, a Doe versus Coe decision, and there is no evidence of that here. All right. Thank you, counsel. Mr. Chartrand, do you have a rebuttal argument? I do. I don't necessarily think I'll have to use all 10 minutes, but I do have some rebuttal argument, if you don't mind, your honor. Well, you may proceed. Keep an eye on the time because I don't believe you'll have 10. Oh, okay. Yes, your honor. Sorry. In regards to the right to control factor underlying, throughout the briefing, and Mr. Kowals did it again today, he conflates the right to control with actual control. No case law requires me as the appellant to the burden of proof to establish there was actual control. It's just the right to control. A case law over and over again, including the one cited by Mr. Kowals in his brief, state that the exercise of the right control is not relevant. It's just the right to control. Now, actual control does create a prima facie case that the right to control element has been proven, but it's just the right to control. The Brunching case out of the Fifth District state that. The Reynolds versus Jimmy case out of the Fourth District states that. And here, the right to control is established by both the testimony of Mr. Clark, the testimony of Mr. Poe, the context in which we find this relationship, the use of the lawnmower, and mowing the lawn that was not included in the lease according to Mr. Clark. I did, in fact, address Mr. Poe's testimony, and this is found in the record at C908, pages 21, where he testifies over and over again, I don't or I wouldn't, as opposed to I couldn't. And again, the right to control is what's pertinent. And the Wabash case had confronted the similar situation. And the Wabash case said of the Fifth District, when you answered something similar to that way, I wouldn't. That doesn't mean you couldn't. So I asked him that you can't tell him when to mow, I don't. You can't tell him what parts of the lawnmower, a lawn to mow, I don't. That's not, I couldn't. So that's in the record as well. As well as Mr. Colwall says that I attempt to conflate the landlord tenant relationship with the employment relationship. I don't attempt to conflate anything. The lease itself and the testimony of Mr. Poe and Mr. Clark tie those relationships together. The lease started at his employment with the Poe defendants. It terminates at the end of his employment with the Poe defendants. And in fact, that's exactly what happened in my motion to reconsider. I presented new evidence where that's exactly what happened. When Mr. Clark ended his relationship with the Poe defendants, his lease ended as well. That actually did happen in this case. The testimony of Mr. Clark itself, he says that part of his employment with Mr. or the Poe defendants was to rent this property. That establishes this different additional relationship, this additional agency relationship where he acted as the property manager. I don't have to conflate those two relationships. The evidence ties them together. And in regards to the last 228 factor, in regards to whether this particular lawn mowing was effectuated or actuated at least in part for the Poe defendants section, our comment A of section 228 states that there is an inference that you are doing it at least in part for the benefit of the employer when you're doing something that is within your relationship. Here again, if the relationship is the property manager, he is doing something that's within it and that inference attaches. If we confine the relationship to the farmhand position, we believe that inference still attaches because again, he was hired as a farmhand and part of being a farmhand was to maintain the Poe defendants properties. And he was doing that in his general nature when he was mowing this lawn, but also he had mowed the roadside ditch of this lawn right before this incident occurred. He had done the very exact same thing. He was hired as a farmhand position to do, or at a minimum is incidental to what his farmhand position role is. And for that reason, your honor, I'd ask that this case be remanded and we'd be allowed to try this case on its merits. Thank you. Okay. Thank you, counsel. Thank you both. The court will take the case under advisement and issue a written decision.